UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NYQF INC.,

                                        Plaintiff,

                    -against-

SIGUE CORPORATION,

                                        Defendant.
------------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

24-CV-3699
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff NYQF Inc. brings this suit against Defendant Sigue Corporation alleging breach of contract, breach of fiduciary duty, breach of Article 4A of the Uniform Commercial Code ("UCC"), and unjust enrichment. *See generally* Dkt. No. 1. Plaintiff contends that Defendant failed to fulfill its contractual obligations to wire monies from persons in the United States to various foreign countries and instead retained the subject funds. *Id.* at ¶¶ 29-52.

Currently before the Court, on referral from the Honorable Ann M. Donnelly, United States District Judge, is Plaintiff's motion for default judgment against Defendant.[1] *See* Dkt. No. 10; Referral Order dated Oct. 15, 2024. For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part.

**I.    Background**

**A.    Factual Allegations**

The following facts—taken from the Complaint, Plaintiff's motion, and the attachments filed in support thereof—are assumed true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [the defendant's] default, a court is

---

[1]   The instant motion was originally referred to then-United States Magistrate Judge Sanket J. Bulsara. Following Judge Bulsara's appointment as a United States District Judge, the undersigned was assigned to the matter on December 21, 2024. *See* Text Order dated Dec. 21, 2024.

required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"); *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. IKNA Constr. LLC*, No. 24-CV-561 (CBA) (JAM), 2025 WL 447731, at *2 (E.D.N.Y. Jan. 15, 2025), *report and recommendation adopted*, 2025 WL 777108 (E.D.N.Y. Mar. 11, 2025).

Defendant is a corporation that is incorporated in Delaware, where it "has a registered agent for the service of process purpose."  Dkt. No. 12 at 1, 4.[2]  Defendant "is a corporation duly organized and existing under the laws of the State of California."  Dkt. No. 1 at ¶ 2.  According to the Complaint, Defendant "is a federally and state licensed 'money transmitter' authorized to wire monies from persons present in the United States to recipients in various foreign countries, including the People's Republic of China."  *Id.* at ¶ 3.  Defendant employed "agents" throughout the United States, including in New York, to conduct money transfer services.  *Id.* at ¶ 4.

Plaintiff, a corporation organized and existing under the laws of the State of New York, represents that it was one of Defendant's agents.  *Id.* at ¶ 5.  In March of 2023, Plaintiff entered into an electronic agreement with Defendant to become an agent of Defendant.  Dkt. No. 10-2 at ¶ 5.  As an agent, Plaintiff "conducted business as an agent of [Defendant] under the agent identification number: 28034 at its commercial storefront located at 136-70 Roosevelt Avenue in Flushing, New York.  Dkt. No. 1 at ¶ 6.  Despite Plaintiff's attempts to recover a copy of the agreement, Plaintiff was unable to do so.  Dkt. No. 10-2 at ¶ 5.

Plaintiff asserts that individuals seeking to transfer money to relatives in China would proceed to its premises and "present funds to Plaintiff 'in cash' with destination instructions for the money transmittal."  *Id.* at ¶ 7.  Plaintiff would accept those funds and use Defendant's online

---

[2]  Page citations are to the ECF-stamped page numbers.

website and electronic equipment to designate bank accounts through which the funds were wired to a location in China. *Id.* at ¶ 8. The intended recipient of the money transfer would then collect the funds from a designated location. *Id.* Both Plaintiff and Defendant "would be paid a fee and/or commissions" for each money transfer. *Id.* At all times during the transfer process, Plaintiff contends that both Plaintiff and Defendant were "fiduciaries": Defendant with respect to the principal sums intended for wire transfer presented to it by Plaintiff; and Plaintiff with respect to the principal sums of money it accepted and transferred to Defendant for transfer overseas. *Id.* at ¶¶ 9-10.

Plaintiff alleges that, "[b]eginning in or about April of 2023, certain monies transferred to [Defendant] by Plaintiff were not transferred to the intended recipients in China and other foreign countries as was intended and instructed by Plaintiff and the 'senders.'" *Id.* at ¶ 15. At first, Defendant allegedly represented that the failure to transfer was due to delays or some other "clerical problem" and "advised Plaintiff simply to wait." *Id.* at ¶ 16. During this period, Plaintiff claims that its customers "began to come to Plaintiff's offices complaining that their intended wire transfer recipients were not receiving the funds intended for them." *Id.* at ¶ 17. Despite Plaintiff's repeated inquiries into the status of the funds to be transferred, Defendant failed to respond. *Id.* at ¶ 18.

Defendant allegedly continued accepting funds submitted by Plaintiff to be transferred while ignoring Plaintiff's inquiries. *Id.* at ¶ 19. According to the Complaint, and unbeknownst to Plaintiff, Defendant "was refusing in all cases to transmit said monies to the intended beneficiaries and instead was simply keeping and retaining the funds." *Id.* Defendant entirely failed to transfer any money to Plaintiff's customer's intended beneficiaries during the period following Plaintiff's initial inquiry, and instead kept and retained the funds. *Id.* at ¶ 20. Plaintiff maintains that

3

Defendant did not "warn or inform [Plaintiff of] the fact that it was retaining the funds rather than transferring them as instructed," offer any explanations for its actions, or remit the funds to be transferred back to Plaintiff, the original senders, or the intended beneficiaries. *Id.* at ¶¶ 20-24.

To date, Defendant has failed to provide an accounting to Plaintiff or respond to any of Plaintiff's correspondences. *Id.* at ¶¶ 26-27.

### B.    Relevant Procedural History

Plaintiff commenced this action on May 22, 2024. *See generally* Dkt. No. 1. A summons was issued to Defendant that same day at the address "Sigue Corporation, 13190 Telfair Ave., Sylmar, California 91342." Dkt. No. 3.

On July 1, 2024, Plaintiff filed the summons returned executed, indicating that it had served Defendant at Registered Agent Solutions, Inc., 838 Walker Road Suite 21-2 in Dover, Delaware. Dkt. No. 7. Plaintiff explains that its research "suggests that Defendant is a company incorporated in the State of Delaware and has a registered agent for the service of process purpose," which it found was Registered Agent Solutions, Inc. Dkt. No. 11 at 1. Thus, Plaintiff served a copy of the civil cover sheet, the summons, and the Complaint on June 19, 2024, at 3:15 p.m. to Registered Agent Solution's managing agent, who provided verbal confirmation that he was "authorized by appointment or law to receive service on behalf of Defendant." Dkt. No. 7.

After Defendant failed to answer the Complaint by the July 10, 2024 deadline (*see* Dkt. No. 7), Plaintiff sought a certificate of default as to Defendant from the Clerk of the Court on August 7, 2024. Dkt. No. 8. On August 9, 2024, the Clerk entered default against Defendant for its failure to appear or otherwise defend the action. *See* Dkt. No. 9. On August 12, 2024, Judge Bulsara ordered that Plaintiff file its motion for default judgment by October 10, 2024. Text Order dated Aug. 12, 2024.

On October 10, 2024, Plaintiff filed the instant motion. *See generally* Dkt. Nos. 10, 10-1-10-10). Plaintiff seeks entry of default judgment against Defendant for breach of contract, breach of fiduciary duty, and unjust enrichment as alleged in Count I, II, and IV of the Complaint. Dkt. No. 10-1 at 7-10. Plaintiff withdraws its claim for breach of Article 4A of the UCC as alleged in Count III of the Complaint, stating that the damages it seeks in connection with Counts I, II, and IV are sufficient to cover its claimed injury. *Id.* at 10. Plaintiff seeks "monetary damages in the amount of $340,677.00, together with interest, costs, and disbursements incurred in connection with this action." Dkt. No. 10-10.

On October 15, 2024, Judge Donnelly referred the instant motion to Judge Bulsara. Referral Order dated Oct. 15, 2024. After the undersigned was assigned to this action on December 21, 2024, Plaintiff was ordered to file a letter indicating to the Court whether it had served Defendant at Defendant's business address in California. Text Order dated Dec. 21, 2024. Additionally, Plaintiff was instructed to outline the efforts it made to determine Defendant's proper business address, as well as any contact information it possessed for Defendant. *Id.*

On January 2, 2025, Plaintiff responded to the Court's orders. Dkt. No. 11. Plaintiff provided the information it possessed as to Defendant's contact information and shed light on the steps it took to properly serve Defendant. *Id.* Plaintiff noted that it "attempted service at the last known business address at 13190 Telfair Ave, Sylmar, CA 91342, but found that the building was vacant." Dkt. No. 11 at 1.

On January 3, 2025, the undersigned ordered Plaintiff to serve a copy of its motion and the docket sheet on Defendant via email. Text Order dated Jan. 3, 2025. Plaintiff filed proof of service that it complied with the January 3, 2025 Order on January 6, 2025. Dkt. No. 12.

Defendant has not appeared in this action to date.

## II.    <u>Standard for Default Judgment</u>

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).  At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)).  "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).  To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).  Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).  The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so

6

that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

## III.  **Jurisdiction and Venue**

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP),

2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    Subject Matter Jurisdiction

The Court has diversity jurisdiction over Plaintiff's claims because Plaintiff seeks damages, exclusive of attorneys' fees and costs, in excess of $75,000, and the parties are citizens of different states. *See* 28 U.S.C. § 1332. The Complaint seeks damages in the amount "no less than $375,667.00." Dkt. No. 1 at 7. As noted above, Plaintiff is organized under the laws of New York. *Id.* at ¶ 3. Defendant's last known business address is in California, and it was incorporated in Delaware where it also has a registered agent. Dkt. No. 1 at ¶ 2; Dkt. No. 12 at 1, 4.

Accordingly, this Court respectfully recommends a finding that the Court has subject matter jurisdiction over Plaintiff's claims.

### B.    Personal Jurisdiction

"A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." *BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *5 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted* (Jan. 9, 2024) (internal quotation marks and citation omitted); *Nat'l Cas. Co. v. Runway Towing Corp.,* No. 19-CV-5091 (DG) (CLP), 2021 WL 5310857, at *2 (E.D.N.Y. Oct. 19, 2021), *report and recommendation adopted*, 2021 WL 5304055 (E.D.N.Y. Nov. 15, 2021) ("A default judgment may not be granted 'if the defendant has not been effectively served with process.'" (quoting *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014))). Plaintiff has the burden of showing adequate service. *Nat'l Cas. Co.*, 2021 WL 5310857, at *2.

Indeed, "[e]ven where the Clerk of the Court has entered the defendant's default, [the] court may appropriately review the adequacy of service before entering a default judgment." *Prescription Containers, Inc. v. Cabiles*, No. 12-CV-4805 (CBA) (VMS), 2014 WL 1236919, at *5 (E.D.N.Y. Feb. 14, 2014) (quotations and citation omitted), *report and recommendation adopted*, 2014 WL 1237098 (E.D.N.Y. Mar. 25, 2014).

"A corporation may be served 'by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Kramer v. Young Money Ent., LLC*, No. 16-CV-1886 (VM), 2016 WL 7190079, at *3 (S.D.N.Y. Nov. 18, 2016) (quoting Fed. R. Civ. P. 4(h)(1)(B)); *see Perez v. Exquisito Rest. Inc.*, No. 23-CV-8707 (OEM) (MMH), 2025 WL 630138, at *3 (E.D.N.Y. Feb. 27, 2025).  An individual or corporation may also be served under Rule 4(h)(1)(A) "pursuant to state law in the state . . . where service is made[.]" *LG Cap. Funding, LLC v. MineralRite Corp.*, No. 16-CV-6158 (PKC) (VMS), 2017 WL 9250297, at *6 (E.D.N.Y. Dec. 1, 2017) (quoting *Jean-Louis v. Warfield*, 898 F.Supp.2d 570, 574 (E.D.N.Y. 2012)).

Under Delaware law, "service of process on a corporation 'shall be made by delivering a copy personally to . . . the registered agent of the corporation in this State." *Church-El v. Bank of New York*, No. 11-CV-877 (NLH) (KMW), 2013 WL 1190013, at *5 (D. Del. Mar. 21, 2013)(quoting 8 Del. C. § 321(a)).  Indeed, Delaware law requires corporations "to maintain a registered agent in the state for receiving service of process." *Gadre v. Hexanika, Inc.,* No. 21-CV-11221 (JPO), 2023 WL 2569882, at *2 (S.D.N.Y. Mar. 20, 2023) (citing 8 Del. C. § 132(a); 8 Del. C. § 321).  "Corporations are required to 'update from time to time as necessary the name, business address and business telephone number of a natural person who is an officer, director, employee, or designated agent of the corporation, who is then authorized to receive

communications from the registered agent.'" *LG Cap. Funding, LLC v. On4 Commc'ns, Inc.*, No. 16-CV-6943 (ENV) (RER), 2018 WL 5020170, at *3 (E.D.N.Y. Jan. 17, 2018), *report and recommendation adopted as modified*, 2018 WL 4583486 (E.D.N.Y. Sept. 25, 2018), *aff'd*, 796 F. App'x 57 (2d Cir. 2020).

Here, Plaintiff properly served Defendant through its registered agent. According to an entity search on the Delaware Department of State Division of Corporations website, Defendant's registered agent is "Registered Agent Solutions, Inc." located at 838 Walker Road, in Dover, Delaware. *See* Dkt. No. 11 at 4.[3] Plaintiff's affirmation of service indicates that it personally served Defendant's registered agent's managing agent with a copy of the civil cover sheet, summons, and Complaint on June 19, 2024. Dkt. No. 7. Thus, Plaintiff's service of process conformed with Rule 4.

Accordingly, the undersigned respectfully recommends that the Court find it has personal jurisdiction over Defendant.

## C.    Venue

"A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, Plaintiff alleges that "Defendant transacted business, was found, or had agents in this District, and the tortious conduct complained of herein this action all occurred within this District." *See* Dkt. No.

---

[3] This Court takes judicial notice of the Delaware Department of State Division of Corporations website, which indicates that Defendant is domestic corporation in Delaware. *See D.E. Dep't of State, Div. of Corps., Corporation & Business Entity Database Search*,
https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx/ (last visited April 18, 2025); *see Miller v. Netventure24 LLC*, No. 19-CV-7172 (LGS) (BCM), 2021 WL 3934262, at *4 (S.D.N.Y. Aug. 6, 2021), *report and recommendation adopted*, 2021 WL 3931928 (S.D.N.Y. Sept. 2, 2021) (recognizing the Delaware Department of State website in connection with a motion for default judgment).

1 at ¶ 13.  Plaintiff conducted business at 136-70 Roosevelt Avenue in Flushing, New York, which is within this district.  *Id.* at ¶ 6.

Accordingly, the undersigned recommends a finding that venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## IV.    <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2</u>[4]

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules."  *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV)(PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *See Fin. Servs. Vehicle Tr. v. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (internal quotation marks and citation omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits.  *See* Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has

---

[4]  The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on January 2, 2025.  As set forth in Local Civil Rule 1.1, "[t]hese Local Civil Rules take effect on January 2, 2025 (the 'Effective Date') and govern actions pending or filed on or after that date."  For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on January 1, 2025 will govern.  Thus, given the timing of the filing of the motion for default judgment on November 15, 2024, the prior Local Rules—updated on July 1, 2024—are applicable here.

been made, and (3) a proposed form of default judgment," and must mail these three items to the last known residence of the defaulting party (if an individual).  Loc. Civ. R. 55.2(b)-(c).

Plaintiff's motion incudes a proper notice of motion, a memorandum of law, and supporting affidavits with exhibits.  *See* Dkt. No. 10.  These exhibits include the Complaint.  Dkt. No. 10-6.  The Clerk of Court has issued a certificate of default against Defendant, and Plaintiff served a copy on Defendant.  *See* Dkt. No. 10-5.  Plaintiff also submitted a proposed form of default judgment.  Dkt. No. 10-10.

Moreover, Defendant's failure to respond to the Complaint here was willful.  Plaintiff filed an affidavit of service showing that Defendant was properly served at through its registered agent (Dkt. No. 10-9) and via email (Dkt. No. 12).  Notwithstanding Plaintiff's efforts described above, Defendant did not respond to the Complaint, did not appear, and has not, in any way, attempted to defend this action, thus constituting willfulness in the context of default judgment.  *See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946 (JS) (AKT), 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) ("[the] [d]efendant has not responded to [the] [p]laintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, [the] [d]efendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Accordingly, the Court respectfully recommends that Plaintiff be found to have satisfied the jurisdictional requirements to proceed with its motion under Local Civil Rules 7.1 and 55.2.

## V.   **Liability**

Plaintiff brings three causes of action against Defendant: (1) breach of contract; (2) breach of fiduciary duty; and (3) unjust enrichment.[5]  Dkt. No. 1 at ¶¶ 29-41, 46-52.

---

[5]  As noted above, Plaintiff has abandoned its claim for breach of Article 4A of the UCC.  Dkt. No. 10-1 at 10.

A.     **Choice of Law**

Before the Court assesses liability, it must determine what law should be applied to Plaintiff's claims.  As noted above, this case is predicated upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  The United States Court of Appeals for the Second Circuit has held that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits.  *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state.") (citation omitted); *see also D'Amato v. Five Star Reporting, Inc.*, 80 F.Supp.3d 395, 407 (E.D.N.Y. 2015) ("As an initial matter, the Court must determine what law should be applied to the [p]laintiff's common law breach of contract and equitable claim[ ] for unjust enrichment[.]").

 "For contract claims, New York applies a 'grouping of contacts' or 'center of gravity' approach" to determine whether to apply New York substantive law.  *Star Ins. Co. v. Champion Constr. Servs. Corp.*, No. 13-CV-3635 (ARR) (RML), 2014 WL 4065093, at *2 (E.D.N.Y. July 30, 2014) (citations omitted), *report and recommendation adopted*, 2014 WL 4065094 (E.D.N.Y. Aug. 15, 2014). In making this determination,

> the [C]ourt should consider '(1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.'

*Id.* (quoting *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998)); *see also Cartagena v. Homeland Ins. Co. of New York*, No. 19-CV-6287 (CM), 2019 WL 6878243, at *4 (S.D.N.Y. Dec. 16, 2019).

Here, Plaintiff has failed to attach a copy of the contract at issue, as it has been unable to locate a copy of the agreement.  Dkt. No. 10-2 at ¶ 5.  Nevertheless, application of New York state

law is appropriate in light of Plaintiff's organization and existence under New York law, as well as its storefront in Flushing where the customers would deposit funds with Plaintiff and where Plaintiff would perform its contractual duties. Dkt. No. 1 at ¶¶ 1, 4, 6-8. Thus, the center of gravity for the contractual dispute at issue favors application of New York law. *See Advani Enters., Inc*, 140 F.3d at 162.

Moreover, where the parties are silent as to the issue of choice of law, "it is appropriate for the Court to apply New York law—the law of the forum state—to Plaintiff's state-law claims." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 528 n.5 (S.D.N.Y. 2012) (citing *Global Switching Inc. v. Kasper*, No. 06-CV-412 (CPS), 2006 WL 1800001, at *11 n. 10, (E.D.N.Y. June 29, 2006)); *Herrschaft v. Nat'l Transportation, Inc.*, No. 21-CV-5618 (PKC) (JRC), 2023 WL 12056617, at *3 (E.D.N.Y. Aug. 2, 2023) ("[P]laintiffs do not address choice of law in their papers, nor has defendant, by virtue of its default. In similar circumstances, courts in this circuit have applied the law of the forum state where the parties have failed to address the issue and also cited exclusively to the forum state's laws.").

Accordingly, the undersigned respectfully recommends that Plaintiff's breach of contract claim be evaluated under New York law.

## B. Breach of Contract

Under New York law, "[i]n order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011); *see*

*also Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015); *accord AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022).

Here, Plaintiff adequately alleges a claim for breach of contract against Defendant for the purposes of this motion.  Concerning the first factor, the Complaint alleges the existence of a contract: that Plaintiff entered an agreement with Defendant, where Plaintiff accepted sums of money from its customers and used Defendant's software, website portals, and "electronic equipment and designated [Defendant] bank accounts through which the funds were 'wired'" to a foreign location.  Dkt. No. 1 at ¶¶ 6-8.  The intended beneficiary would then collect the money from a designated location in transfer location.  Dkt. No. 1 at ¶¶ 4-8.  As a result, Plaintiff and Defendant would receive a fee and commission.  *Id.* at ¶ 8.  Further, the Complaint contends that the parties' abided by this arrangement until April of 2023.  *Id.* at ¶ 11.

Although Plaintiff fails to include a copy of the contract in support of its motion, "a plaintiff is not required to attach a copy of a contract to a complaint that alleges breach of that contract." *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 332 F. Supp. 3d 488, 506 (D. Conn. 2018) (applying New York law to breach of contract claim); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012); *see Daytree at Cortland Square, Inc. v. Walsh*, 332 F. Supp. 3d 610, 637 (E.D.N.Y. 2018) (same).  Rather, all that is required is that the Complaint "'set forth the terms of the agreement upon which liability is predicated by express reference,'" *see James*, 849 F. Supp. 2d at 322 (quoting *Howell v. Am. Airlines, Inc.*, No. 05-CV-3628 (SLT), 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006)), which Plaintiff adequately alleges.  *See* Dkt. No. 1 at ¶¶ 4-11.  *See Tunne v. Discover Fin. Servs., Inc.*, No. 22-CV-5288 (JGLC) (VF), 2024 WL 4664755, at *5 (S.D.N.Y. Oct. 3, 2024), *report and recommendation adopted*, 2024 WL 4827854 (S.D.N.Y. Nov. 18, 2024) ("[A]lthough a plaintiff "is not required to attach a copy of the contract or to plead its

terms verbatim, a complaint in a breach of contract action must nevertheless set forth the terms of the agreement upon which liability is predicated.") (citations omitted).

Plaintiff also satisfies the remaining breach of contract elements. Plaintiff contends that it adhered to its obligations under the agreement by transmitting funds deposited by its customers to Defendant. *Id.* at ¶ 15, 19. Despite Plaintiff's performance, Defendant failed to actually wire the funds to the intended beneficiaries without explanation or reimbursement. *Id.* ¶15-24. The Complaint alleges that Plaintiff incurred damages as a result of Defendant's breach in an amount of "no less than $375,667,00." *Id.* at ¶ 34, 7.

These allegations are sufficient at the default judgment stage to establish Defendant's liability for breach of contract under New York law. *See, e.g., BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG) (RLM), 2022 WL 704127, at *5 (E.D.N.Y. Mar. 9, 2022); *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB) (RML), 2022 WL 18558800, at *2 (E.D.N.Y. Dec. 19, 2022) (finding allegations in complaint sufficient to establish liability for breach of contract on default judgment motion), *report and recommendation adopted*, 2023 WL 1766282 (E.D.N.Y. Feb. 3, 2023).

Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be granted with respect to its breach of contract claim against Defendant.

## C.    Breach of Fiduciary Duty and Unjust Enrichment Claims

Plaintiff's remaining causes of action against Defendant are for breach of fiduciary duty and unjust enrichment. *See* Dkt. No. 1 at ¶¶ 36-41, 46-52. "[C]laims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008); *see also BASF Corp.*, 2022 WL 704127, at *5. "New York law does not permit recovery under unjust enrichment . . . where such

claims are duplicative of a breach of contract claim and the court has determined that there is a valid, enforceable contract that governs the same subject matter." *Skyline Restoration, Inc.*, 2019 WL 5150207, at \*4; *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) ("The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.") (internal quotation marks and citation omitted); *Cont'l Cas. Co. v. Contest Promotions NY, LLC*, No. 15-cv-501 (MKB), 2016 WL 1255726, at \*3-\*4 (E.D.N.Y. Mar. 28, 2016) (denying default judgment as to unjust enrichment claim upon finding that it was duplicative of breach of contract claim). Likewise, "[a]s a general rule, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Murphy v. Snyder*, No. 10-CV-1513 (JS) (AKT), 2014 WL 12988632, at \*11 (E.D.N.Y. Aug. 15, 2014) (internal quotations and citations omitted) (collecting cases), *report and recommendation adopted*, 2014 WL 4700213 (E.D.N.Y. Sept. 22, 2014).

Here, Plaintiff's breach of fiduciary duty and unjust enrichment claims arise from the same set of facts as Plaintiff's breach of contract claim. *Compare* Dkt. No. 1 at ¶¶ 29-35, *with id.* at ¶¶ 36-41, 46-52. Indeed, the underlying allegations for the causes of action are nearly identical to the claim for breach of contract. Further, the claims seek the same monetary figures in damages as the figures sought for the respective breach of contract claims. *See id.* Specifically, in the Complaint, Plaintiff's breach of fiduciary duty and unjust enrichment claims seek the same $375,667.00 in damages as its claim for breach of contract. *Id.* at ¶¶ 34, 40, 48, 51.

When a valid contract governs the dispute between parties, the plaintiff is not entitled to recover for claims duplicative of a claim for breach of that contract. *See Serrano v. Palacios*, No. 21-CV-980 (CBA) (TAM), 2022 WL 2134293, at \*8 (E.D.N.Y. May 20, 2022) (dismissing breach of fiduciary duty claim that was duplicative of breach of contract claim), *report and*

17

*recommendation adopted*, 2022 WL 2132951 (E.D.N.Y. June 14, 2022); *Skyline Restoration, Inc.* 2019 WL 5150207, at *4 (recommending denying default judgment for unjust enrichment claim that was duplicative of the breach of contract claim); *La Saltena S.A.U. v. Ercomar Imports Internacional Corp.*, No. 21-CV-4675 (KAM) (LB), 2024 WL 2319622, at *7 (E.D.N.Y. May 22, 2024) (denying plaintiff's unjust enrichment claim as an invalid cause of action under New York law, where a valid contract existed between the parties, and the claim was duplicative of the breach of contract claim).

Therefore, this Court respectfully recommends that Plaintiff's motion for default judgment be denied with respect to its breach of fiduciary duty and unjust enrichment claims, as such claims are duplicative of Plaintiff's breach of contract claim. *See BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2024 WL 3740439, at *8 (E.D.N.Y. Aug. 10, 2024*), report and recommendation adopted* (Sept. 27, 2024), *judgment entered*, No. 23-CV-2796 (HG) (JAM), 2024 WL 4648142 (E.D.N.Y. Sept. 30, 2024); *see also N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (dismissing breach of fiduciary duty claim as duplicative where it failed to include allegations that were separate and apart from the breach of contract claim).

## VI.  **Damages**

### A.    **Claimed Damages**

As Defendant's liability has been established with respect to Plaintiff's breach of contract claim, the Court turns to evaluate damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158.  "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty."

*Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).

Under Federal Rule of Civil Procedure 54(c), "'[a] default judgment must not differ in kind from, or exceed the amount, what is demanded in the pleadings.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 n.16 (2d Cir. 2011) (quoting Fed. R. Civ. P. 54(c)); *see also Trustees of Metal Polishers Loc. 8aA-28A Funds v. Nu Look Inc.*, No. 18-CV-3816 (PKC) (RLM), 2020 WL 6370146, at *3 (E.D.N.Y. Feb. 14, 2020) ("[Rule 54(c)] limits a plaintiff's default judgment recovery to the relief sought in the complaint, and "ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer" (citations omitted)), *report and recommendation adopted*, *Trustees of Metal Polishers Loc. 8A-28A Funds v. Nu Look Inc.*, 2020 WL 5793204 (E.D.N.Y. Sept. 29, 2020).

"Rule 54(c) is not violated, however, when a court awards damages that accrued during the pendency of the litigation if the complaint put defendant on notice that plaintiff might seek such damages." *Finkel v. Triple A Grp., Inc.*, 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010); *King v. STL Consulting, LLC*, No. 05-CV-2719 (SJ), 2006 WL 3335115, at *4-*5 (E.D.N.Y. Oct. 3, 2006) (permitting additional damages than the amount specified in the complaint because the plaintiff established by declaration that more damages accrued during the pendency of the litigation).

Once liability is established, "the court must ascertain damages with 'reasonable certainty.'" *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2019 WL 4439347, at *2 (E.D.N.Y. Sept. 17, 2019) (citation omitted). "An evidentiary hearing is not required so long as there is a basis, by detailed affidavits and other documentary evidence, for the damages awarded." *Id.* (citation omitted); *Wilmington Sav. Fund Soc'y, FSB ex rel. Aspen Holdings Tr. v. Fernandez*,

712 F. Supp. 3d 324, 330 (E.D.N.Y. 2024) ("The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment"). "The party seeking to recover costs bears the burden of adequately documenting and itemizing the costs requested." *CIT Bank N.A.*, 2019 WL 4439347, at *2 (cleaned up).

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 185 (2d Cir. 2007).  A plaintiff may submit documentary evidence or detailed affidavits to support its damages claim. *Chen*, 2023 WL 2583856, at *14.

Here, and although Plaintiff's Complaint seeks $375,667.00 in damages for the breach of contract claim (Dkt. No. 1 at ¶ 40), Plaintiff's memorandum in support of its motion seeks $340,677.00. Dkt. No. 10-1 at 10.  The proposed default judgment order also seeks $340,677.00 in monetary damages.  Dkt. No. 10-10.  Plaintiff submits copies of deposit receipts and a sales report from Defendant that corroborate the damages sum of $340,677.00. Dkt. No. 10-2 at ¶¶ 13-14 (declaration of Plaintiff's president); Dkt. No. 10-4 (deposit receipts); Dkt. No. 10-5 (sales report).  The sales report reflects 52 deposits between May 15, 2023 and May 25, 2023 by Plaintiff's customers with the status of "Hold." Dkt. No. 10-5 at 5-8.  The declaration of Plaintiff's president affirms that a "Hold" status "means the money was held by Defendant."  Dkt. No. 10-5 at 5-8; Dkt. No. 10-2 at ¶ 14.  The sales report also has a status indicator titled "Refund," where the amount deposited "was refunded to its senders." Dkt. No. 10-2 at ¶ 14.  Thus, Plaintiff contends that those funds marked as held were never transferred to the intended foreign beneficiaries, but

20

instead remain in Defendant's possession.  Dkt. No. 10-1 at 8.  The 52 deposits with a held status total $340,677.00.[6]  Dkt. No. 10-2 at ¶ 15.

Upon review of the documents filed in support of Plaintiff's claimed damages, confirmed by the sum of the 52 held deposits as reflected by the sales report, the undersigned recommends an award of $340,677.00 to Plaintiff for the damages incurred as a result of Defendant's breach of contract.  *Cont'l Cas. Co.*, 2016 WL 1255726, at *6 (recommending award of damages for breach of contract based off the plaintiff's submissions); *La Saltena S.A.U. v. Ercomar Imports Internacional Corp.*, No. 21-CV-4675 (KAM) (LB), 2024 WL 2319622, at *8 (E.D.N.Y. May 22, 2024) (same); *see also Fernandez*, 712 F. Supp. 3d at 330 ("The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment").

## B.    Costs[7]

Plaintiff seeks "costs[] and disbursements incurred in connection with this action."  Dkt. No. 10-1 at 10; Dkt. No. 10-10 (seeking costs and disbursements in proposed judgment).  Plaintiff has not included any documentary support for an award of costs, nor does it request such costs in a specific amount.

Federal courts sitting in diversity jurisdiction look to Federal Rule of Civil Procedure 54(d)(1) to calculate costs, which provides that "[u]nless a federal statute, these rules, or a court

---

[6]  The sum of the deposits totaled $338,400.  Dkt. No. 10-5 at 5-8.  Under the agreement, Plaintiff imposed a fee ranging from $38.00 to $45.00 on each deposit.  Dkt. No. 1 at ¶ 8; Dkt. No. 10-5 at 5-8.  On the 52 deposits, Plaintiff's fees totaled $2,277.00.  Dkt. No. 10-5 at 5-8.  Thus, the total sum of funds transferred to Defendant that were marked as held was $340,677.00.

[7]  Plaintiff did not submit a request for attorneys' fees in its motion or proposed judgment (*see* Dkt. Nos. 10-1, 10-10), despite requesting "reasonable attorneys' fees" in the Complaint.  Dkt. No. 1 at ¶¶ 35, 41, 45, 52; *id.* at 7.  The Court finds that Plaintiff has thus abandoned its request for attorneys' fees.  *See BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2024 WL 3740439, at *11 (E.D.N.Y. Aug. 10, 2024) (collecting cases).

order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *see also BASF Corp*, 2022 WL 704127, at *9; *Arch Specialty Ins. Co. v. B & V Constr. Inc.*, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at *7 (E.D.N.Y. Apr. 23, 2024) ("Filing fees and costs for service are appropriately reimbursable as litigation costs.").

"Filing fees are recoverable without supporting documentation if verified by the docket." *US All. Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 665 (E.D.N.Y. 2023) (Donnelly, J.) (collecting cases). Here, the docket indicates that Plaintiff paid the $405.00 filing fee. Therefore, Plaintiff is entitled to costs and disbursements in the sum of $405.00.

In the absence of any specific award of costs and without any additional documentary support, the undersigned respectfully recommends that Plaintiff be awarded $405.00 for the cost of the filing fee for this action. *See Mulligan Funding LLC v. Tommy Interior Contracting Corp.*, 741 F. Supp. 3d 1, 16-17 (E.D.N.Y. 2024) (denying request for costs that did not include documentary support).

### C.    Pre-judgment Interest

Plaintiff also requests interest on the award of monetary damages for its breach of contract claim. *See* Dkt. No. 1 at ¶ 35; Dkt. No. 10-1 at 10; Dkt. No. 10-10. Although Plaintiff does not explicitly request pre-judgment interest, the Second Circuit has held that prejudgment interest "is generally mandatory 'upon a sum awarded because of a breach of performance of a contract'" unless the relief sought is equitable in nature. *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (quoting N.Y. C.P.L.R. § 5001(a)).

"Under New York law, if a plaintiff prevails on a claim for breach of contract, that plaintiff is also entitled to pre-judgment interest." *BASF Corp. v. Gabriel's Collision Norman Ave., Inc.*,

No. 21-CV-1908 (ENV) (RER), 2022 WL 1407244, at *3 (E.D.N.Y. Jan. 12, 2022) (awarding pre-judgment interest where the plaintiff prevailed on its breach of contract claim).  The statutory rate for pre-judgment interest is nine percent per annum under the New York Law.  *See* N.Y. C.P.L.R. § 5004; *see also Arch Specialty Ins. Co.*, 2024 WL 1739862, at *7.  The court should calculate pre-judgment interest "from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made."  N.Y. C.P.L.R. §§ 5001(b)–(c), 5004.  Nevertheless, courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]"  *Eco-Fuels LLC v. Sarker*, No. 22-CV-250 (KAM) (JAM), 2024 WL 779038, at *9 (E.D.N.Y. Feb. 26, 2024) (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Here, and because Plaintiff seeks monetary damages rather than equitable relief, pre-judgment interest is appropriate at a rate of nine percent per annum.  *See* N.Y. C.P.L.R. § 5004.  Based off Defendant's sales report exhibiting the deposits marked as held (and thus never transferred to the beneficiary), the earliest ascertainable date for Plaintiff's breach of contract claim appears to be May 15, 2023 where Defendant held a transfer for $6,400.00.  Dkt. No. 10-5 at 5.

Therefore, May 15, 2023 is a reasonable date to begin calculating pre-judgment interest for Plaintiff's claim for breach of contract.  *See BASF Corp.*, 2022 WL 1407244, at *3 (recommending that pre-judgment interest should be calculated from December 31, 2019, where complaint alleged that defendant breached the agreement "in December 2019").

Accordingly, this Court respectfully recommends that pre-judgment interest be awarded to Plaintiff at: (1) $84.00[8] *per diem* from May 15, 2023 through the date of entry of final judgment for Plaintiff's claim for breach of contract.

---

[8]  (340,677.00 x .09)/365 = 84.00.

### D.    Post-judgment Interest

Plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a).  The Second Circuit has consistently held that post-judgment interest, as governed by federal statute, is mandatory.  *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008); *see Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011) ("The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered"), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011).

Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment."  *Cabrera v. Canela*, 412 F. Supp. 3d 167, 186 (E.D.N.Y. 2019) (quoting 28 U.S.C. § 1961(a)).

Therefore, this Court respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.  *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015).

### VII.   Conclusion

For the reasons set forth above, this Court respectfully recommends:

(1) granting in part and denying in part Plaintiff's motion for default judgment against Defendant;

(2) awarding Plaintiff damages totaling $341,082.00, comprising $340,677 in damages; $405.00 in costs and disbursements; and pre-judgment and post-judgment interest.

A copy of this Report and Recommendation is being electronically served on counsel. This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant and to file proof of service on ECF by April 21, 2025. Copies shall be served at the following addresses:

Sigue Corporation via customerservice@sigue.com

Sigue Corporation Through Registered Agent Solutions, Inc.
838 Walker Road Suite 21-2
Dover, Delaware 19904

Sigue Corporation
13190 Telfair Ave.
Sylmar, California 91342

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Donnelly. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York
            April 18, 2025                              **SO ORDERED.**

                                                        _/s/ Joseph A. Marutollo_
                                                        JOSEPH A. MARUTOLLO
                                                        United States Magistrate Judge

25